### *Ex parte* Fitzgerald.

A *writ of error* does not lie to the supreme court, to review a decision upon a *special motion* refusing a *mandamus* commanding a subordinate court to set aside a rule granting a new trial.*

Error from the supreme court. Joseph Alexander and John Mullen, brought an action of assumpsit in the superior court of the city of New-York, against Robert A. Fitzgerald, on two promissory notes. The defendant pleaded an insolvent discharge, and the plaintiffs replied a [ *649 ] new promise. *The plaintiffs obtained a verdict which was set aside and a *venire de novo* awarded by the supreme court on writ of error, 19 *Wendell,* 402. The cause was again tried and the *defendant*

* This case decided December, 1839.

obtained a verdict, upon which a rule for judgment was entered, which by the rules of the court became *perfect* within *four* days. Five days *after the rule became perfect*, the defendant's attorney was served with an order to stay proceedings, and subsequently the superior court set aside the verdict and granted a new trial. The defendant applied to the supreme court for a *mandamus* commanding the superior court to vacate the rule setting aside the verdict and granting a new trial and *to render judgment upon the verdict* in favor of the defendant. The supreme court refused to allow the *mandamus :* holding that the whole matter rested in the discretion of the superior court, with the exercise of which they could not interfere. The defendant thereupon sued out a writ of error, removing the proceedings into this court.

The cause was submitted on written arguments, and after advisement the following opinion was delivered by the CHANCELLOR : who, after entitling the cause thus, " In the court for the correction of errors,—The People *ex relatione* Robert A. Fitzgerald *vs.* The Justices of the Superior Court of the city of New-York : or Fitzgerald *vs.* Alexander & Mullen, *alias dictus* the matter of the writ of error sued out by Robert A. Fitzgerald, &c. &c." proceeded as follows : " This case is evidently a *novus hospes* here ; as neither the attornies upon the record, nor the learned counsel who have taken the liberty to send us their written introductions, appear to know the true name of the guest who is obtruded upon the notice of this court, to tax its hospitality without a legal invitation. In plainer language, the writ of error in this case is brought for the purpose of compelling this court to review a decision of the supreme court, upon a special motion for a peremptory mandamus against the judges of the superior court of the city of New-York, ordering them to set aside a rule granting a new trial to the plaintiffs in that court ; and as I believe a writ of error was never before brought upon such a special motion, it is not at all surprising \*that the at-   [ \*650 ] torney who sued out the writ in his client's own name, instead of the name of the people on his relation, should have some difficulty in ascertaining whether the plaintiffs in the suit in the superior court, or the judges of that court, were the real defendants in his writ of error. He therefore entitles his assignment of errors, " In the matter of the writ of error sued out by Robert A. Fitzgerald," his client, " upon the refusal of the supreme court," &c., telling the whole story and making an assignment of errors which would apply to either. To this the plaintiffs in the superior court, who had obtained a decision in that court in their favor, supposing that they were the parties who might be eventually affected by this proceeding against the judges of the superior court, come voluntarily into this court, and answer the assignment of errors for the judges, entitling their joinder in error in the same manner as in the assignment. And the counsel for these parties, although they have, under a shorter and more modest title, fully discus-

sed the merits of the special motion, have neither of them told us how the plaintiffs, in the suit in the superior court, became authorized to appear and defend this writ of error, instead of the judges of that court, who would at least have been the nominal parties, if an alternative mandamus had been granted so as to give them an opportunity to make a return to the allegations which might be contained therein.

There is no doubt that a writ of error will lie upon a judgment of the supreme court, for an error in matter of law, in granting or refusing a peremptory mandamus, where the facts of the case have all been settled by common law pleadings and the verdict of a jury thereon, or upon a judgment on a formal demurrer to the return of the officer or body proceeded against by an alternative mandamus. Such are the cases referred to by the plaintiff's counsel, as having been decided in this court; and many other cases of the same description might be found in the books of reports both in this country and in England. But in the case of *The People, ex rel. Dykeman and Martin*, v. *The Mayor and Common Council of the City of Brooklyn*, 13 *Wendell*, 130, the question was fully considered ; and the [ *651 ] members *of this court unanimously concurred in the opinion which was then read, showing that a writ of error would not lie upon the decision of the supreme court on a special motion refusing a mandamus, even after an insufficient return to an alternative writ ; but that the relator must proceed under the statute to obtain a formal judgment upon a verdict or upon demurrer. The writ of error in that case was therefore dismissed. In this case it appears, from the anomalous paper which the prosecutor has procured to be signed by the clerk of the supreme court, and to be returned to this court as a record of the proceedings upon his special motion, that instead of applying for an alternative writ in the first instance, as he should have done if he wished in the end to obtain judgment upon which a writ of error would lie, applied to the court upon affidavits, for a peremptory mandamus, commanding the justices of the superior court to alter the decision which they had made, and to set aside the rule granting to the plaintiffs a new trial.

I do not intend to express any opinion at this time upon the question whether a mandamus will lie to compel the judges of an inferior court to give a better judgment upon a matter which was within their jurisdiction, and which it was their duty to decide according to their own judgments, upon their oaths of office, as that is a question upon the merits of the case which. I think cannot be decided on this writ of error. I must, however, be permitted to say, as I have before had occasion to remark, that a proceeding by mandamus, which must be against the court or body to whom the alternative mandamus is directed, and upon which proceeding a court may be mulcted in damages and costs, and harassed with writs of error, &c. for erroneous decisions which they may have made in perfect good faith, appears to be a ve-

ry inappropriate remedy to correct an erroneous judgment. It is the same in character, though I will not say it is quite as bad as that which was applied in such cases by the good king Arthur, who, as we learn from an ancient legal work entitled *The Mirrour of Justice*, (*Horne's Transl. p.* 239,) hanged no less than forty-four judges in one year, because either he or those whom he appointed to review their *judgments, thought [ *652 ] their respective decisions had been erroneous. And the author of that work, in his very commendable zeal for an administration of justice in which no public wrong can exist without an appropriate remedy, sets it down as an abuse of the common law of England, that this precedent of King Arthur was not followed at the time when that work was written.

Although this court has in one or two instances, under very peculiar circumstances, entertained a writ of error to reverse a final decision of the supreme court, which was not a judgment in the common law sense of the term, I must again be permitted to enter my protest against all attempts to force upon this court a jurisdiction upon writs of error to review all the various decisions which may be made upon summary applications by special motion to the supreme court. A decision of that court refusing to grant a new trial, where the party making the application supposes the verdict was against the weight of evidence, or refusing to open a judgment by default for a supposed irregularity, or upon an affidavit of merits, is a determination of that court which is as final in its nature as a refusal of an alternative or a peremptory mandamus to an inferior court, upon a summary application. Certain discretionary powers must of necessity be vested in some judicial tribunals ; and occasional errors in judgment are inseparable from human nature. And in questions depending on the exercise of a sound judicial discretion, with a full view of the bearing and effect which the decision may have upon the rights of other parties in analogous cases, the decision of the supreme court will be more likely to be correct, than the decision which we might make, if we attempted to correct it upon a writ of error, considering the manner in which this court is constituted, and the little opportunity we have to make ourselves acquainted with mere questions of practice. The members of this court will also perceive, that if we entertain writs of error of this description, it will be utterly impossible for us to dispose of the business which comes legitimately before us.

Having arrived at the conclusion that we have no *jurisdiction [ *653 ] either to affirm or reverse this decision of the supreme court upon a special motion, and that the whole proceeding in this court is erroneous in substance as well as in form, and for want of the proper and necessary parties to enable us to reverse the decision of the court below upon the special motion, and award a mandamus against the justices of the superior court, I think this writ of error should be dismissed.

Writ of error dismissed.